UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| AMY RAMAGOS,<br>        Plaintiff | CIVIL ACTION NO.: |
| v. | SECTION: |
| COMMUNITY HOSPICES OF<br>AMERICA, INC. D/B/A COMPASSUS<br>HOSPICE AND PALLIATIVE CARE,<br>        Defendant | MAGISTRATE: |

## COMPLAINT AND JURY DEMAND

### I.  INTRODUCTION

1. This is a proceeding for damages and injunctive relief to redress the deprivation of rights secured to Amy Ramagos ("Ramagos" or "Plaintiff") by the Family and Medical Leave Act of 1993, 29 U.S.C. §2601 *et seq*. ("FMLA"), the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., as amended, ("Title VII"), the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§12101 *et seq.* ("ADAAA"), and the Louisiana Employment Discrimination Law, La. R.S. 23:301 *et seq.*

2. FMLA protects employees who must take workplace leave for their own medical reasons as well as for the care of a family member with a serious health condition.

3. Under Title VII, as amended by the Pregnancy Discrimination Act, and parallel Louisiana law, discrimination on the basis of pregnancy, childbirth, or related medical conditions constitutes unlawful sex discrimination.

4. The "association" provision of the ADAAA protects a qualified employee from discrimination based on her relationship or association with a disabled individual.

5. As alleged further below, Ramagos' employer discriminated and retaliated against her when it negatively impacted her terms and conditions of employment, and actually or constructively discharged her from employment because of her pregnancy and pregnancy-related conditions, because of her association with her infant child who is an individual with a disability, and/or because she exercised her rights under the FMLA.

## II.  JURISDICTION

6. The jurisdiction of the Court over this controversy is invoked pursuant to the provisions of 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1367 (supplemental jurisdiction).

## III. VENUE

7. The unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Middle District of Louisiana.  Venue, therefore, lies in the United States District Court for the Middle District of Louisiana under 42 U.S.C. § 2000e-5(f)(3).  Venue is also appropriate in the United States District Court for the Middle District of Louisiana under 28 U.S.C. § 1391.

## IV.  PARTIES

8. Ramagos is a resident of Ascension Parish, Louisiana.

9. Defendant, Community Hospices of America, Inc. d/b/a Compassus Hospice and Palliative Care, ("Compassus" or "Defendant"), is a Delaware corporation authorized to do and doing business in the State of Louisiana.  Compassus operates several hospices in the State of Louisiana, including one location at 6700 West Jefferson Highway in Baton Rouge and another located at 610 West Pinhook Road in Lafayette. *See*, http://compassus.com/locations/.

## V.  STATEMENTS OF FACTS

10.     At all times relevant herein, Compassus employed over 50 employees within a 75 mile radius of Baton Rouge, Louisiana.

11.     On or about January 17, 2012, Ramagos was hired as a Team Coordinator at Compassus' Baton Rouge hospice.

12.     On or about February 2013, Ramagos was promoted to Admissions Coordinator. In her job as Admissions Coordinator, Plaintiff handled admissions of hospice patients at Compassus' Lafayette, Louisiana hospice facility and its Baton Rouge, Louisiana hospice facility.

13.     In the spring of 2016, Plaintiff became pregnant.

14.     On or about June 6, 2016, Sally Roberts ("Roberts") become the new Executive Director of Compassus' hospices in Lafayette and Baton Rouge, as well as Plaintiff's supervisor.

15.     On or about June 10, 2016, Ramagos underwent a pregnancy-related ultrasound which revealed that her unborn child had a birth defect of the lung called Congenital Pulmonary Airway Malformation ("CPAM").  Plaintiff's health care providers advised her that her pregnancy was high-risk and would require additional monitoring of her and her unborn child.

16.     CPAM is a cystic lung condition involving abnormal, non-functioning lung tissue, and it constitutes a disability affecting a major life activity, namely the major bodily function of respiration.

17.     Upon learning that her unborn child had a birth defect, Plaintiff advised her supervisor Roberts that she had been diagnosed with a high-risk pregnancy. Plaintiff further explained to Roberts that Plaintiff would need to go to additional doctor's appointments to

monitor her health and the health of her unborn child. Roberts assured Plaintiff that she could come in early, stay late, work weekends, and make up her time however she needed to.

18. Ramagos made it a practice to record on her timesheet when she left and returned for doctor's appointment. On days when she had doctor's appointments, she came in early, worked through lunch, and used her break-time for appointments.

19. On or around July 19, 2016, Roberts began questioning Ramagos about her doctor's appointments, stating that she would now have to approve Ramagos coming in early or staying late to perform her duties on days when she had doctor's appointments. Roberts stated, "We may need to look at times worked ect [sic] to see what is best for the program." Roberts further demanded that Ramagos provide her with a tentative schedule.

20. Other employees at Compassus also had different health conditions or need for flexibility that required them to attend doctor's appointments and make up work, but Roberts singled out only Plaintiff for increased scrutiny.

21. On or around July 20, 2016, Plaintiff advised Roberts that she had been completing her work in a timely manner while managing her doctor's appointments and expressed the concern that Roberts' sudden scrutiny of her need for doctor's appointments may constitute pregnancy discrimination.

22. On or around September 16, 2016, Ramagos's physician placed her on best rest due to her high-risk pregnancy. Plaintiff, therefore, began her approved FMLA leave on that day.

23. On or around September 28, 2016, Pam Tribby, a Compassus Human Resources employee, advised Plaintiff that her FMLA leave would expire in twelve (12) weeks on December 12, 2016. Tribby further stated that if Plaintiff needed additional leave, Plaintiff could

discuss it with Roberts and that such leave would fall under Compassus's Discretionary Leave Policy.

.       24.     On October 7, 2016, Plaintiff's child was born.

24.     25.     On or around November 17, 2016, Ramagos requested that Roberts grant her an additional three weeks of discretionary leave because her baby's birth defect prevented him from attending daycare. Roberts agreed to the request.

26.     On or around December 5, 2016, Roberts texted Ramagos that she wanted her to come into the office for a meeting. On or about December 6, 2016, during her FMLA leave, Ramagos met with Roberts and Damon Fontenot, Director of Clinical Services, and was told that when she returned to work she would be "PRN," meaning she would work only when needed. Roberts claimed this was due to a low census of patients.

27.     In the December 5, 2016, Ramagos expressed her concern that Roberts' failure to return Ramagos to the same or equivalent position violated the FMLA. In response, Roberts stated that she thought denying Plaintiff her full-time position would "make you happy because you can stay home with your sick child."

28.     While Plaintiff was on leave, Roberts began permanently assigning Plaintiff's duties to other employees.

29.     On or about December 23, 2016, Plaintiff emailed a written complaint about Robert's conduct to Dennis Wade, the Senior Vice-President of Human Resources at Compassus.

30.     Thereafter, on or about January 3, 2017, Ramagos returned to work whereupon Roberts told Plaintiff that she would be completely relieved of her duties as Admissions Coordinator for the Lafayette Compassus site and confirmed that her duties at the Baton Rouge site had been transferred to other employees.

5

31. On or about January 3, 2017, Plaintiff was also told that she would like be sent home early each day, resulting in her inability to work full-time at 40 hours per week.

32. Because her Admissions Coordinator duties had been shifted to other employees, Roberts gave Plaintiff menial tasks to perform such as taking down a Christmas tree and unpacking supplies from boxes.

33. On or around January 6, 2017, Roberts and Maggie Bahou ("Bahou"), Vice President of Human Resources at Compassus, told Plaintiff she would be sent home at approximately 10 a.m. each day if there was no work for her to do.

34. On or around January 13, 2017, Roberts told Plaintiff she was not to come into work at all unless she was summoned.

35. On or around January 15, 2017, Ramagos emailed Bahou and Roberts confirming that she had been discharged from employment because her duties had been taken away from her and assigned to other employees, leaving her no work to do.

## VI.  DAMAGES

36. As a direct and proximate consequence of Defendant's unlawful and/or discriminatory policies and practices, Plaintiff has suffered a loss of income, including, but not limited to, past and future wages, reinstatement, benefits, payment for COBRA insurance and various other expenses, pain and suffering, mental anguish, compensatory damages, liquidated damages, and attorney's fees and costs, all to be specified at trial.

## VII.  STATEMENT OF CLAIMS
## FIRST CLAIM FOR RELIEF – RETALIATION AND/OR INTERFERENCE
## VIOLATIONS OF THE FMLA

37. Plaintiff restates, re-alleges and re-avers and hereby incorporates by reference any and all allegations of paragraphs 1 through 36, inclusive herein.

38. Plaintiff's high-risk pregnancy and her child's birth defect constituted serious health conditions under the FMLA.

39. Plaintiff's taking of leave, requests for leave, and complaints regarding Defendant's treatment of her constituted protected activity under the FMLA; Defendant adversely affected plaintiff's terms and conditions of employment because of her protected activity, culminating with her actual or constructive discharge from employment when plaintiff attempted to return to work in 2017.

40. Plaintiff alleges that Defendants' violation or violations of the FMLA were not in good faith.

41. Plaintiff further alleges that Defendants repeatedly discriminated, interfered with and/or retaliated against Plaintiff for exercising her FMLA rights, culminating in her discharge from employment, justifying an award, *inter alia*, of back pay, front pay, interest, benefits, liquidated damages, other monetary losses, and attorney's fees.

**SECOND CLAIM FOR RELIEF – ASSOCIATION DISABILITY DISCRIMINATION IN VIOLATION OF THE ADAAA**

42. Plaintiff restates, re-alleges and re-avers and hereby incorporates by reference any and all allegations of paragraphs 1 through 41, inclusive herein.

43. Plaintiff's child has disability within the meaning of the ADAAA.

44. Plaintiff's child has CPAM, a birth defect of the lung, which affects the major bodily function of respiration.

45. Plaintiff alleges that she was a qualified individual with an association to an individual with a known disability, namely her child.

46. Plaintiff suffered adverse employment action(s) as a result of disability discrimination because of her relationship with her disabled child.

7

47. The acts complained of herein deprived Plaintiff of equal employment opportunities, by terminating her employment because of the disability status of her child.

48. The unlawful employment practices herein were committed with malice or reckless indifference to Plaintiff's federally protected rights.

49. Plaintiff alleges that Defendant, unlawfully and discriminatorily terminated or constructively terminated Plaintiff's employment on account of her association with a person with a known disability (Plaintiff's child), and said action violated the provisions of the ADAAA, justifying an award, *inter alia*, of back pay, front pay, interest, benefits, special damages, compensatory damages, and attorney's fees.

### THIRD CLAIM FOR RELIEF - RETALIATION IN VIOLATION OF THE ADAAA

50. Plaintiff restates, re-alleges and re-avers and hereby incorporates by reference any and all allegations of paragraphs 1 through 49, inclusive, herein.

51. Plaintiff alleges that she has been retaliated against and discharged from employment because of her association with an individual with a disability, namely her child, in violation of the ADAAA, as amended.

### FOURTH CLAIM FOR RELIEF – PREGNANCY DISCRIMINATION AND RETALIATION IN VIOLATION OF TITLE VII AND LOUISIANA LAW

52. Plaintiff restates, re-alleges and re-avers and hereby incorporates by reference any and all allegations of paragraphs 1 through 51, inclusive, herein.

53. Plaintiff alleges that the wrongful and unlawful treatment of Plaintiff by Defendant was a violation of Title VII because it constituted discrimination on the basis of gender due to pregnancy.

54. Plaintiff alleges that because of her pregnancy she was denied terms and conditions of employment commensurate with those offered to similarly situated co-workers in violation of Title VII and Louisiana law, specifically La. R.S. 23:341 *et seq.*

## VIII.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

55. Prior to filing this action, Plaintiff timely filed a written charge with the Equal Employment Opportunity Commission within the appropriate number of days and has received a right to sue letter. Plaintiff also provided written notice of a dispute to defendant more than 30 days before filing this action.

56. Plaintiff has filed this action prior to the expiration of ninety (90) days from the date of receiving her right to sue letter from the EEOC.

## IX.  JURY DEMAND

57. Plaintiff herein demands a trial by jury of all issues in this action that may be tried by jury.

## X.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for judgment as follows:

a. For a money judgment representing compensatory damages, including lost wages, past and future wages, all other sums of money, including any and all fringe benefits and any other employment benefits together with interest on said amounts;

b. For emotional distress, mental anguish and compensatory damages;

c. For liquidated damages;

d. For pre- and post-judgment interest, if applicable;

e. For lost monies and damages pertaining to out-of-pocket expenses, including but not limited to insurance payments for COBRA;

f. For injunctive and equitable relief as provided by law;

g. For costs of suit, including an award of reasonable attorney's fees and expert fees; and

h. For such other and further relief as may be just and proper.

Respectfully submitted,

*/s/ Robert B. Landry III*
Robert B. Landry III  (#18998)
rlandry@landryfirm.com
**ROBERT B. LANDRY III, PLC**
5420 Corporate Boulevard, Suite 204
Baton Rouge, Louisiana 70808
Telephone:    (225) 349-7460
Facsimile:     (225) 349-7466

**COUNSEL FOR PLAINTIFF,
AMY RAMAGOS**